UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:13-CV-521-DJH

JOYCE "ROXANNE" VAUGHN                                                         PLAINTIFF

V.

TARGET CORPORATION                                                             DEFENDANT

**MEMORANDUM OPINION AND ORDER**

      This is a slip-and-fall case at Target.  Joyce "Roxanne" Vaughn was injured after falling because of what she claims was a foreign substance on the floor in one of Target Corporation's stores.  Target denies the existence of a foreign substance and believes something else caused her fall.  This Court recently denied Target's motion for summary judgment.  *Vaughn v. Target Corp.*, No. 3:13-CV-521, 2014 WL 4999194 (W.D. Ky. Oct. 21, 2014).  The case is set for trial; both parties have filed several motions in limine.  Some are agreed-upon; others are contentious; many would be better addressed as they arise at trial.  The Court will only discuss the contentious motions that are ripe for decision before trial.  Others will be denied without prejudice; should they arise at trial, the parties should make the appropriate objections.

      A brief factual summary provides some context to these motions.  A surveillance video captured Vaughn's fall.  This video is somewhat grainy but does generally depict the series of events leading to the fall.  Vaughn was walking alone on a white tile floor in Target when she fell forward and onto her side.  Ken Puckett, Target's Executive Team Leader, was walking in the opposite direction; he passed the area where Vaughn fell.  Six seconds later, Vaughn can be seen falling forward and to the right.  Shortly thereafter, Puckett and other Target employees

assisted Vaughn.  While the video shows these events, the place on the tile where Vaughn fell is obstructed and blurred in the surveillance video.

At the summary judgment phase, Vaughn had two sources of support to establish the existence of a spot on the floor: her word and a shoe.  First, she swore that she saw and felt the substance on both the floor and her shoe.  In her deposition, Vaughn testified that she saw a brown, sticky, textured substance on the floor, roughly "an inch or an inch and a half" wide, immediately after her fall.  (DN 28-3, at 27.)  Moreover, she testified that she immediately discovered that some of this substance had transferred from the floor to her shoe.  (DN 28-3, at 28.)  Second, Vaughn claims to have kept the shoe.  She brought a pair of gold, open-toed shoes to her deposition with a dark substance on the sole of the left shoe.  She stated that she had not worn the shoes since her fall and that the substance on the sole "had to be" the same material she stepped in to cause her fall.  (DN 28-3, at 28.)

Target presented a different story.  First, seconds before Vaughn's fall, Puckett walked right by the alleged location of the substance but saw nothing on the floor.  Second, Puckett could not find the substance on the floor immediately after Vaughn's fall.  In his deposition, Puckett described somewhat of an awkward exchange with Vaughn.  Puckett said he approached Vaughn to "see if she was okay" after falling.  (DN 28-4, at 22.)  Vaughn then pointed to the ground and told Puckett there was a brown substance on the floor.  (DN 28-4, at 22.)  Puckett testified: "I looked and I didn't see anything.  Then she said, 'it's right there.'  And I rubbed the floor.  And I saw nothing." (DN 28-4, at 22-23.)  After Puckett offered to fill out an incident report, Vaughn walked away.  (DN 28-4, at 22.)  And Puckett continued looking for this spot on the floor: "I even got down on my hands and knees and rubbed the floor with my bare hand, but I didn't see or feel anything." (DN 28-4, at 22-23)  And though the surveillance video is far too

2

blurry to show details, it does appear to show Puckett bending over and touching the floor just after the incident. Third, there was never a clean-up of the area where Vaughn fell. Fourth, Target does not believe Vaughn brought the proper shoes to her deposition. These shoes were presented for the first time at her deposition, which occurred several months after the fall. And the shoes she presented were gold, but the shoes described in the incident report were black.

Target also provided another possible explanation for the fall. The video depicts Vaughn walking down a main walkway in the store, perpendicular to the aisles. Just before Vaughn fell, a shopping cart appeared out of the perpendicular aisle closest to Vaughn. Though the video footage is unclear, Target thought that this cart may have struck or scared Vaughn, causing her to fall. Vaughn herself denies the cart had anything to do with her accident.

I.

The court begins by addressing Plaintiff's motions.

1.

First, Plaintiff moved to exclude the Target surveillance video of Plaintiff's fall under Federal Rule of Evidence 403. (DN 55.) This rule provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. This is a balancing test that favors admission. Importantly, "[u]nfair prejudice does not mean the damage to a [party's] case that results from the legitimate probative force of the evidence; rather it refers to evidence which tends to suggest a decision on an improper basis." *United States v. Newsom*, 452 F.3d 593, 603 (6th Cir. 2006) (quotation omitted). A district court has very broad discretion in making this determination." *United States v. Semrau*, 693 F.3d 510, 523 (6th Cir. 2012) (quotation omitted).

Because the video is grainy, Plaintiff argues, its probative value is substantially outweighed by a danger that it would mislead the jury or unfairly prejudice Plaintiff. The Court disagrees.

The surveillance video, though grainy, has a great deal of probative value in this case. The video provides a complete overview of the events leading to Plaintiff's fall, coupled with a running clock. No one questions its authenticity or doubts the identity of the relevant parties. It shows at least two significant witnesses in this case—Ken Puckett, the Target employee who walked past the alleged spot and later assisted Plaintiff after her fall, and Plaintiff herself. It does not cut off at any time. Moreover, the video seems to corroborate much of the testimony from both sides in this case. It is objective evidence that both sides can use to argue their theory of the case. Whether Plaintiff fell because of a sticky substance is a credibility issue; both sides agree the video is too blurry to show a spot on the floor. This fact, though unfortunate in the search for truth, does not completely strip the video of its probative value.

By contrast, the likelihood of jury confusion or unfair prejudice is low. The video is blurry; it cannot show spots on the floor. It appears to show a shopping cart in a perpendicular aisle appearing just as Plaintiff falls. This certainly does not help Plaintiff's case here, as it provides Target with a possible explanation for the fall. Still, the Court does not believe that any unfair prejudice to Plaintiff substantially outweighs the probative value of the video evidence. Plaintiff will have the opportunity to rebut Target's shopping cart theory. And if the jury believes that Plaintiff did, in fact, slip on a dark substance, she will benefit greatly from the video showing a Target manager walking right past the spot just seconds before the fall.

2.

Plaintiff also asked to exclude any arguments or testimony that Plaintiff fell because she was struck by a cart, claiming any such arguments would be based on "mere speculation." (DN

56.) In support, she claims that the video is too grainy to make a definitive conclusion and that there were no other witnesses. But the video does show another customer appearing just as Plaintiff fell. This is an issue that Plaintiff can address at trial during Plaintiff's direct examination and closing argument. If the jury believes Plaintiff that the shopping cart did not cause her fall, then it will reject Defendant's theory. But the video is certainly open to more than one reasonable interpretation as to what caused Plaintiff's fall. This motion is denied.

3.

Plaintiff's motion to exclude evidence that Plaintiff has filed other civil actions is unopposed. (DN 56.) This motion is therefore granted.

4.

Plaintiff also moved to exclude any evidence that the Plaintiff filed for bankruptcy on relevancy grounds. (DN 56.) Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Fed. R. Evid. 401. According to Defendant, Plaintiff is a builder who filed for Chapter 7 bankruptcy on September 6, 2012, allegedly as a result of being sued by a client for return of $35,000. The debt was discharged in bankruptcy on December 4, 2012. The next month, January 2013, Plaintiff called Target to pursue her claim for money damages arising out of the fall that occurred nine months earlier (on March 29, 2012). Defendant contends that Plaintiff's financial condition is relevant as a possible motive for pursuing litigation. That is not a fact that is of consequence in determining this action. Target does not assert that Plaintiff's bankruptcy had anything to do with her fall or resulting damages. Her motive to file suit is irrelevant to any issue in the case. Even if it were relevant, her bankruptcy would be excluded

under Rule 403: the potential for undue prejudice is extremely high and there is little, if any, probative value. This motion is granted.

5.

Plaintiff moved to exclude any evidence of Plaintiff's migraine headaches. (DN 56.) It is not yet clear whether this will be relevant or have any probative value. This motion is denied.

6.

Plaintiff moved to exclude any evidence or arguments that Plaintiff had received prior steroid injections in her back for pain, prior to her fall. (DN 56.) Plaintiff's medical history is relevant to her claim for compensation; both parties intend to submit medical records examined by experts. If the injections occurred too long before the fall to have any effect on her damages, Plaintiff will be able to make those arguments on cross-examination of Defendant's expert or on direct examination of its own witnesses. This motion is denied.

7.

Plaintiff moved to exclude evidence that Plaintiff was pushed over a box of tiles and onto the ground by a client in an altercation. (DN 56.) According to Defendant, Plaintiff was assaulted by a former client in January 2013, nine months after the fall and two months before she saw a doctor. Her own physician testified in a deposition that this would be relevant to determining which of her injuries, if any, were caused by the fall. This is relevant medical history; any undue prejudice does not substantially outweigh the probative value of Plaintiff's fall to this case. This motion is denied.

8.

Plaintiff moved to exclude evidence of Plaintiff's prior urinary problems. (DN 56.) The relevance or probative value of this evidence is not yet clear. This motion is therefore denied.

9.

Plaintiff moved to exclude evidence of her prior history of vertigo. (DN 56.) Defendant does not intend to introduce such evidence. This motion is granted.

10.

Plaintiff moved to exclude evidence of her claims for nerve injury or carpal tunnel to her right thumb, hand, or harm. (DN 56.) The basis for this motion is not clear; it would be better presented in context at trial. This motion is denied.

11.

Plaintiff moved to exclude testimony of why or how Plaintiff obtained counsel. Defendant does not oppose and it does not seem relevant. (DN 56.) The motion is granted.

12.

Plaintiff filed a number of generalized motions that reference the rules of evidence but not the facts of this case. (DN 56.) For example, Plaintiff moved to exclude hearsay not covered by an exception, references to insurance payments, and settlement discussions. The Court will respond to specific evidentiary objections at trial. These motions are denied.

13.

Plaintiff again moved to exclude reference to her prior claim for injuries to her elbow, arm, wrist, or carpal tunnel syndrome. (DN 58.) Several days after her original motion to exclude this testimony, Plaintiff submitted additional reasons for why Defendant should not be able to introduce evidence that she injured her arm or wrist. She claims that she will no longer be seeking any damages for injury related to her elbow or arm. Defendant opposes the motion, claiming that the elbow injury was Plaintiff's first complaint to a medical provider after her fall

at Target. The Court agrees generally that the timing of her complaints to her doctors is relevant. This motion is therefore denied; any further objections should be made at trial.

14.

Plaintiff also rehashed its motion to disallow Target from making any argument that perhaps Plaintiff fell after being struck by or startled by a shopping cart. (DN 67.) This motion is denied for the same reasons stated above.

15.

Plaintiff also seems to have filed another motion to prohibit Defendant from introducing Plaintiff's medical records. (DN 67.) The Court still lacks sufficient information to rule the motion. This motion is therefore denied; Plaintiff should object if problems arise at trial.

16.

Plaintiff also asked that the Court prohibit Defendant's "Video Time Line" exhibit. (DN 69.) Plaintiff disagrees with a few of the words Defendant used in the exhibit and also says the time line should be excluded for the same reasons as the video. The Court does not have sufficient information to rule on this motion; it is therefore denied.

17.

Plaintiff moved to prevent Defendant from introducing portions of Plaintiff's Facebook page. (DN 69.) Plaintiff argues the posts constitute inadmissible hearsay. However, Rule 801(d)(2) provides that a statement is not hearsay if it "is offered against an opposing party and . . . was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2). In one post, Plaintiff said she "fell one year ago and hurt her bursa and they removed it! All better now . . . ." This is a statement that will be offered by Defendant against Plaintiff; Plaintiff made the statement on her Facebook page. Accordingly, it is not hearsay under Rule 801(d)(2).

Plaintiff also argues that it would be confusing to the jury that Plaintiff said she was "better" because "the term 'better' can mean many things." This is something Plaintiff can explain during her direct examination, but it is not grounds to exclude the statement.

Plaintiff also raises concerns that the posts contain private information of other individuals who are not parties to this case. The Court will review these questions when it can review the posts. For now, the Court will deny the motion.

18.

Plaintiff also filed a supplemental motion in limine concerning the introduction of Plaintiff's medical records. They claim Defendant wants to introduce irrelevant and confusing records that exceed what is relevant to this case. This is an argument better addressed when the court can view the records and Defendant can explain its use of those records; the motion is therefore denied.

II.

The Court next considers Defendant's motions.

1.

Defendant moved to prohibit lay witnesses from offering medical opinion testimony. This motion does not reference the facts of the case. The Court will apply the Federal Rules of Evidence at trial; Defendant should make any specific objections it has at that time. The motion is therefore denied.

2.

Defendant also moved to exclude evidence of its financial condition, asserting that Plaintiff might try to present Defendant as a wealthy corporation that puts revenues and profits ahead of safety. This would be better addressed if it arises at trial. The motion is denied.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Plaintiff's motions to exclude the following forms of evidence or arguments are SUSTAINED:

- Plaintiff's prior involvement in civil litigation.
- Plaintiff's bankruptcy.
- Plaintiff's prior history of vertigo
- Why or when Plaintiff hired counsel.

IT IS FURTHER ORDERED that Plaintiff's motions to exclude the following forms of evidence or arguments are DENIED WITHOUT PREJUDICE:

- That Plaintiff was struck by a cart.
- Plaintiff's migraine headaches.
- Plaintiff's earlier steroid injections.
- An altercation between Plaintiff and a former client that caused Plaintiff to fall.
- Plaintiff's prior urinary problems.
- Plaintiff's nerve injury or carpal tunnel in her right thumb, hand, or arm.
- Defendant's exhibits.
- Plaintiff's Facebook posts.
- All other motions in limine.

IT IS FURTHER ORDERED that Target's motions in limine (DN 64 and DN 65) are DENIED WITHOUT PREJUDICE.

February 13, 2015

**David J. Hale, Judge**
**United States District Court**

cc:   Counsel of Record